UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GREGORY JOHNSON,

    Defendant.

Case No. 20-cr-20278

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER [18]

### I. INTRODUCTION

On June 12, 2020, Defendant Gregory Johnson ("Defendant") was charged in a criminal complaint for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1, PageID.1. Defendant was subsequently charged in an indictment with this count.[1] *See* ECF No. 10. On June 18, 2020, a detention hearing was held before Magistrate Judge Anthony P. Patti. ECF No. 8. Magistrate Judge Patti concluded that the Government established with clear and convincing

---

[1] A First Superseding Indictment was issued on August 12, 2020, adding three additional counts: possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) (Count II); another felon in possession of a firearm and ammunition charge, in violation of 18 U.S.C. § 922(g)(1) (Count III); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count IV). *See* ECF No. 25.

-1-

evidence that there is no condition or combination of conditions of release that will reasonably assure the safety of other persons and the community, as well as a preponderance of evidence that no condition or combination of conditions will reasonably assure Defendant's appearance. ECF No. 9, PageID.36. Thus, Defendant was detained pending trial. *Id.* at PageID.37.

Presently before the Court is the Defendant's Motion for Revocation of Detention Order, filed on July 16, 2020. ECF No. 18. The Government filed a Response on July 31, 2020. ECF No. 22. A hearing on this matter was held on August 19, 2020. For the reasons that follow, the Court will **DENY** Defendant's Motion Revocation of Detention Order [#18].

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Offense

On June 4, 2020, the Detroit Police Department ("DPD") initiated a traffic stop on a vehicle driven by Defendant.[2] ECF No. 1, PageID.6. During the traffic stop, the officers discovered Defendant had several outstanding warrants, including

---

[2] The Court denotes that the DPD initiated this traffic stop during its ongoing homicide investigation. ECF No. 22, PageID.77. DPD detectives are currently investigating the April 29, 2020 homicide of Michael Mendenhall. *Id.* DPD officers recovered Defendant's vehicle—which Defendant was driving on June 4, 2020—at the scene of the homicide. *Id.* Surveillance cameras from a nearby liquor store also captured Defendant and Mendenhall shortly before the homicide. *Id.* Magistrate Judge Patti recognized that Defendant has not been charged for this incident; however, he stated he could not ignore these facts. ECF No. 24, PageID.118.

an active bench warrant for failure to appear on an operating-while-intoxicated charge. ECF No. 22, PageID.77. The officers then conducted an inventory search of Defendant's vehicle upon his arrest. *Id.* They discovered a loaded .45 caliber pistol, which was concealed in a panel in the driver side door. *Id.* A subsequent "Stolen Firearms Query" revealed this firearm was reported stolen out of Southgate, Michigan in February 2017. ECF No. 1, PageID.9.

Federal agents subsequently obtained a criminal complaint and arrest warrant for Defendant. ECF No. 22, PageID.77. Agents executed two search warrants at residences associated with Defendant on June 16, 2020. *Id.* They recovered the following items during their search of the Prevost Street residence, where Defendant allegedly lives with his wife: a loaded Smith & Wesson AR-15 .223 caliber assault rifle; a significant amount of ammunition of various calibers, including an extended rifle magazine; distribution amounts of various drugs, including heroin, fentanyl, and marijuana; two digital scales; and drug packaging materials. *Id.* at PageID.78. Agents recovered the following items during their search of the Crescent Street address:[3] one loaded Ruger, LCP .380 caliber pistol; one loaded Bushmaster XM AR-15 .223 caliber rifle; two magazines taped together; additional ammunition of various calibers; and a notice to appear for Defendant from the 36th District Court.

---

[3] Defendant reported to Pretrial Services that he lives with his brother, Andre Porter, and son, Davion Johnson, at this address.

*Id.* at PageID.79. Defendant's brother and son claimed ownership of the firearms and ammunition at this address. *Id.*

Defendant appeared before Magistrate Judge Patti for his initial appearance on June 16, 2020 and was ordered detained pending trial following his detention hearing two days later. *See* ECF No. 9. On June 25, 2020, a grand jury found probable cause to indict Defendant on one count of being a felon in possession of a firearm and ammunition. *See* ECF No. 10.

On August 12, 2020, a First Superseding Indictment was issued. ECF No. 12. The substance of the Government's allegations in Count I was maintained. *Id.* at PageID.121–22. The First Superseding Indictment added three additional counts: possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) (Count II); felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count III); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count IV). *Id.* at PageID.122–24. These three additional charges stem from the federal agents' findings during their execution of two search warrants on June 16, 2020.

### B. Defendant's Background

Defendant is forty years old and a lifelong resident of the Eastern District of Michigan. Defendant has resided with his brother, Andre Porter, and son, Davion Johnson, who is nineteen years old, in Detroit since 2018. His wife reported that

Defendant remains in constant contact with his immediate family and has a strong family support system. Defendant has worked as a team member for Becharas Brothers Coffee Company since May 1, 2019.

Defendant claims that he is in excellent physical health with no medical problems. He also does not report any history of mental health illness. Defendant asserts that he first began experimenting with marijuana at age fourteen. He reports daily use of marijuana and occasional consumption of alcohol. Defendant previously completed a six-week substance abuse treatment program while incarcerated with the Michigan Department of Corrections.[4]

Defendant has a history of several arrests, criminal convictions, and multiple outstanding bench warrants, beginning at the age of twelve. Several of his convictions include convictions for violent offenses and firearm offenses. Defendant has one outstanding criminal bench warrant, for failure to appear on an operating-while-intoxicated charge, in the 34th District Court, and four outstanding civil bench warrants in the 23rd District Court.

### C. Detention Hearing

Prior to his detention hearing, Pretrial Services recommended that Defendant be detained pending trial. On June 18, 2020, Defendant appeared before Magistrate

---

[4] Pretrial Services was unable to verify this information at the time of writing its report.

Judge Patti. ECF No. 8. Magistrate Judge Patti found that detention is warranted. ECF No. 9.

At the detention hearing, Magistrate Judge Patti emphasized the "disconcerting" circumstances surrounding the serious nature of the instant offense,[5] as well as Defendant's criminal history and past failures to appear. ECF No. 24, PageID.114–19. Magistrate Judge Patti also denoted that Defendant is subject to an enhancement under 18 U.S.C. § 924(e)(1). *Id.* at PageID.119  In his order of detention, Magistrate Judge Patti highlighted several findings in support of detention, including: (1) Defendant's extensive criminal history; (2) Defendant's carjacking conviction, which was done at gunpoint with a mother and her one-year-old child; (3) the circumstances surrounding the instant offense, which not only involve the firearm found in Defendant's car, but also numerous firearms, large amounts of ammunition, literature linking him to a gang, distribution amounts of various drugs, and paraphernalia associated with the distribution of controlled substances at the two searched properties; (4) Facebook posts, as well as prison calls, which reveal Defendant is a high ranking gang member; (5) strong circumstantial evidence which connects Defendant to a recent fatal shooting; and (6) Defendant's

---

[5] At the time of Defendant's detention hearing, he was only charged with one count of being a felon in possession of a firearm and ammunition. *See* ECF No. 10.

multiple outstanding bench warrants and probation violations. ECF No. 9, PageID.37.

While Magistrate Judge Patti acknowledged several of Defendant's positive characteristics, including his employment and strong familial ties to the area, he found that the Government had established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. *Id.* at PageID.36. He also determined that the Government had established by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance. *Id.* He thus ordered Defendant to be detained pending trial. *Id.* at PageID.37.

### III. LEGAL STANDARD

Title 18 U.S.C. § 3145(b) allows the district judge to review an order detaining a defendant. It is a *de novo* hearing. *United States v. Jones*, 804 F. Supp. 1081 (S.D. Ind. 1992); *U.S. v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). "The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Generally, in order for a defendant to be detained, the government must establish the (1) "risk of flight by a preponderance of the evidence" or (2) "dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). Pre-trial detention shall be ordered only if a judicial officer "finds that

no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

In determining whether there are conditions which will reasonably assure the appearance of the person and the safety of the community, the district court must make findings based on the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g).

## IV. ANALYSIS

### A. The Parties' Arguments

In his present Motion, Defendant moves this Court, pursuant to 18 U.S.C. § 3145(b), to grant his Motion for Revocation of Detention. ECF No. 18. He argues that he poses neither a danger to the community nor a risk of flight. *Id.* at PageID.61. He emphasizes that conditions can be imposed to alleviate concerns, such as subjecting Defendant to GPS monitoring and placing Defendant with a third-party custodian. *Id.* at PageID.62. In support of his Motion, Defendant attaches records to support the allegedly legal purchase of the firearms by a co-resident of at least one of the two residences; a letter from his employer in support of his ability to obtain

gainful employment; and contact information from two potential third-party custodians in support of his proposed release plan.[6]  *See* ECF Nos. 19, 20, 21.

The Government argues that Defendant is both a significant danger to the community and a flight risk.[7]  ECF No. 22, PageID.82.  In its Response brief, the Government asserts that the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of Defendant's continued detention pending trial.  *Id.* at PageID.83.  Moreover, the Government argues that Defendant's request for placement with a third-party custodian and GPS tether is "unavailing" in light of his past conduct and his purportedly inconsistent answers regarding his residency to Pretrial Services' interview questions.  *Id.* at PageID.87.

At the hearing, the Government emphasized that the First Superseding Indictment includes three more substantial charges against Defendant.  Moreover, the Government pointed out that since Defendant's detention hearing, it has received a drug report and a DNA report.  The Government also explained that there is now

---

[6] At the hearing, Defense counsel conceded that Mr. Ryan Jackson, a close family friend of Defendant, is not an appropriate third-party custodian in light of Pretrial Services' August 18, 2020 memorandum.

[7] The Court takes notice of the Government's additional argument: that Defendant fails to present new, material evidence to reopen the detention hearing pursuant to 18 U.S.C. § 3142(f).  ECF No. 22, PageID.88.  Defendant did not bring his motion under § 3142(f), nor did Defendant file a Reply to respond to the arguments raised by the Government.  The Court will thus analyze Defendant's present Motion solely under 18 U.S.C. § 3145(b).

a rebuttal presumption in light of the additional charges in the First Superseding Indictment.

## B. The Bail Reform Act

Magistrate Judge Patti determined at the detention hearing that the factors under 18 U.S.C. § 3142(g) support detention. ECF No. 9. In weighing all four factors under § 3142(g), this Court also finds that the evidence supports Defendant's continued detention on both dangerousness and non-appearance grounds.

### 1. Nature and Characteristics of the Charged Offense

The first factor the Court must consider is the nature and circumstances of the offenses charged against Defendant. The Government argues that the offense for which Defendant is charged "heavily" supports detention. ECF No. 22, PageID.83. The Government highlights the circumstances surrounding the traffic stop, where DPD officers found a loaded, stolen firearm; Defendant's outstanding bench warrants; and federal agents' execution of two search warrants less than two weeks after the initial traffic stop. *Id.*

The full extent of the nature and circumstances of the charged offenses is unquestionably serious. First, the DPD officers found a loaded, stolen firearm in a hidden panel in the driver-side door of Defendant's vehicle. Second, and less than two weeks after this initial traffic stop, agents discovered several, fully loaded assault rifles and over 100 rounds of ammunition of various calibers. The Court

takes notice of the two receipts which Defendant submitted in support of his present Motion. ECF No. 19. Even if these records clearly established the legal purchase of the discovered firearms by one of Defendant's co-residents, which the Court does not find at this juncture, the Court cannot ignore the several other items obtained during the two searches. Specifically, agents discovered distribution amounts of various drugs, including a heroin, a Schedule I controlled substance, fentanyl, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance, and other related items, including two digital scales and drug packaging materials.

Moreover, agents also obtained a search warrant for Defendant's cellphone. This search revealed messages about Defendant purportedly obtaining additional firearms as early as November 2019. The Court finds that Defendant's repeated possession of loaded firearms and assorted ammunition, in addition to distribution amounts of various drugs and related materials, demonstrate Defendant's dangerousness.

As to Defendant's risk of flight, the Court denotes that the DPD officers discovered that Defendant had an active bench warrant for failure to appear during the initial traffic stop. Further, Defendant's Pretrial Services Report reveals Defendant has four other outstanding bench warrants. These bench warrants demonstrate Defendant's risk of non-appearance. Accordingly, this first factor thus weighs in favor of Defendant's detention.

## 2. The Weight of the Evidence

The second factor the Court must consider is the weight of the evidence against Defendant. "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010); *see also United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

The Government argues that the weight of the evidence of Defendant's dangerousness and risk of non-appearance is strong. ECF No. 22, PageID.86. For this second factor, the Government emphasizes Defendant's lengthy criminal history; five active bench warrants; and Defendant's Pretrial Services interview, where Defendant allegedly provided an inaccurate address. *Id.*

The Court agrees and finds that the weight of the evidence of Defendant's dangerousness and risk of flight is strong in light of the alleged offense. As to Defendant's dangerousness, as explained above, agents obtained a substantial amount of concerning physical evidence, including loaded firearms and significant quantities of various drugs and related distribution materials. Moreover, the Court takes notice of the strong circumstantial evidence which connects Defendant to the recent homicide of Michael Mendenhall. As to Defendant's risk of non-appearance, there are several outstanding bench warrants. Further, Defendant's Pretrial Services Report reveals multiple probation violations.

In his Motion, Defendant emphasizes his extensive ties to the Detroit area and his employment history. ECF No. 18, PageID.62. He suggests that he could be subjected to GPS monitoring while residing with Ms. Champain Millhouse, his presumptive third-party custodian, to accurately monitor his movement. *Id.* While the Court finds that such conditions may mitigate a concern for Defendant's future court appearances, such conditions do not ease the Court's concern of his dangerousness. Indeed, the Court questions how effective a GPS tether can be in preventing Defendant from possessing loaded firearms and significant amounts of drugs in the proposed residence, especially where five minor children also reside in the home. *See* ECF No. 21, PageID.72. In sum, the second factor also weighs in favor of Defendant's detention.

### 3. History and Characteristics of the Defendant

The third factor requires that the Court review the history and characteristics of the Defendant, which are statutorily separated into two categories. The first category examines the Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The second category asks "whether, at the time of the current offense or arrest, [Defendant] was on probation, on parole, or on other release

pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

Here, Defendant is a lifelong resident of the community with extensive ties to the Detroit area. ECF No. 18, PageID.62. His wife, son, mother, and four siblings live in the area. He asserts that his family "has provided him emotional and psychological support since his arrest[.]" *Id.* Defendant has worked as a team member at Becharas Brothers Coffee Company since May 2019. The Becharas Brothers Coffee Company CEO and President, Nicholas D. Becharas, explains that Defendant has showed up to work on a timely basis each day. ECF No. 20, PageID.70. He also asserts that Defendant has "exemplified a willingness to learn various jobs" and "always possesses a good attitude." *Id.* In his Motion, Defendant also mentions his recent neighborhood fundraising and mentoring activities for children. The Court commends Defendant for these positive actions since his release from parole and lengthy criminal sentence.

Defendant does not report any history of mental health illness and claims that he is in excellent physical health. He reports that he completed a six-week substance abuse treatment while incarcerated with the Michigan Department of Corrections. He claims to use marijuana daily and consumes alcohol occasionally.

The Government directs the Court to Defendant's lengthy criminal history, which includes convictions for firearm offenses and drug offenses. ECF No. 22,

PageID.84.  Defendant concedes that he has a "significant prior criminal history"; however, he argues that these prior convictions occurred when he was much younger.  ECF No. 18, PageID.62.  He also emphasizes that he was gainfully employed with a well-established company for a year prior to the instant arrest.  *Id.*

The Government highlights Defendant's carjacking conviction, which involved brandishing a loaded firearm at a mother and her infant child.  ECF No. 22, PageID.84–85.  The Court takes notice that Defendant was sentenced to seventeen years imprisonment for this conviction.  The Government further argues that Defendant's criminal history demonstrates a pattern of non-compliance with court orders.  *Id.* at PageID.85.  Finally, the Government asserts that Defendant is a high-ranking member of a violent gang.  *Id.*  It explains that recorded prison calls and Defendant's phone messages indicate Defendant's gang-related business and other members' contact information.  *Id.*  The Government thus insists that Defendant's history and characteristics weigh heavily in favor of detention.

Based on the foregoing considerations, the Court agrees that this third factor also weighs in favor of detention.

### 4. The Nature and Seriousness of the Danger Posed by Defendant's Release

The fourth and final factor demands that the Court consider "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release."  18 U.S.C. § 3142(g)(4).  The Court must "look to more than

whether or not the defendant himself has been guilty of physical violence," but also to the safety of the community as a whole. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). Here, for all the reasons set forth above, the Court finds that Defendant would pose a danger to the community if released pending trial. Furthermore, the Court weighs strongly the recommendation from Pretrial Services, which concluded that there was no condition or combination of conditions that could reasonably assure Defendant's appearance and the safety of the community. This final factor thus also weighs in favor of detention.

Moreover, the Court agrees with the Government's concern for Defendant's proposed conditions. *See* ECF No. 22, PageID.87–88. While electronic monitoring is available for qualifying defendants, the Court questions how Pretrial Services can effectively monitor Defendant's possession of loaded firearms, ammunition, drugs, and drug-packaging materials while inside his residence. Further, the Court questions the adequacy of Defendant's proposed release plan, specifically one to his niece's home in Inkster, Michigan, where five minor children reside. *See* ECF No. 21, PageID.72.

In sum, all four factors under § 3142(g) weigh in favor of detention. Accordingly, the Court concludes that no conditions or combination of conditions will reasonably assure the safety of the community and Defendant's future appearances as required if Defendant were released pending trial.

## V. CONCLUSION

Accordingly, for the reasons articulated above, the Court **DENIES** Defendant's Motion for Revocation of Detention Order [#18].

**IT IS SO ORDERED.**

Dated: August 19, 2020

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 19, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager